UNITED STATES DISTRICTR COURT

DISTRICT OF MASSACHUSETTS

**03 CV 12388 RGS**

TAJIEN WHITE,
    Petitioner

V.  MAGISTRATE JUDGE Collings     CIVIL ACTION NO.

COMMONWEALTH OF MASSACHUSETTS,
    Respondent.

AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED

### PETITION FOR WRIT OF HABEAS CORPUS

Now comes the petitioner, Tajien White, and petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. 2241.

1. On September 11, 2000, petitioner was convicted, after a bench trial in the Middlesex Superior Court, of the crime of statutory rape. Thereafter, he was sentenced to probation under very restrictive conditions. The Appeals Court affirmed the conviction. <u>Commonwealth v. White</u>, 58 Mass. App. Ct. 1103 (2003), 788 N.E.2nd 1021. The decision, an unpublished opinion, was a memorandum and order pursuant to Rule 1:28 of the Rules of the Appeals Court. (Copy of the memorandum attached hereto and marked "A"). The Supreme Judicial Court denied the application for further appellate review. <u>Commonwealth v. White</u>, 439 Mass. 1110 (2003), 793 N.E. 2nd 375.

2. The petitioner is presently on probation and being supervised by the Middlesex Probation Department, which has custody and control of petitioner.

3. The judgment of conviction under which petitioner is presently being supervised was obtained in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States in that his statement, which was given without understanding of or waiver of rights under Miranda v. Arizona, 384 U.S. 436 (1966), was introduced against him at trial.

4. The pertinent facts showing the Constitutional violation are as follows:

a. Petitioner, a resident of Boston in 1998, was a METCO student attending Belmont High School. He had also attended grade school in Belmont. In 1998 he was a high school junior.

b. During the winter vacation of February, 1998, one of petitioner's classmates had a party at his house while his parents were out of town. Alcohol was served at the party. The petitioner brought Erin Marie Woodbury to the party. She was a fifteen-year-old freshman. Petitioner, at the time, was seventeen years old. Woodbury drank a lot of beer at the party. At some point, petitioner took her to the upstairs bathroom. The door was shut, but not locked. Woodbury claimed that petitioner had intercourse with her, against her will. A DNA analysis revealed that the petitioner, an African-American, could not be excluded. However, according to the report, numerically, the petitioner was one in thirteen. This meant that, "if you have a room with thirteen African-American individuals, you would expect to come across someone who

could have contributed to this mixture appropriately at one time." (Tr.2-53.

      c. After Woodbury made the complaint, the petitioner learned that the Belmont Police wanted to speak with him. He went to the police station and, after waiting several hours, spoke with Detective Kevin Shea. The <u>Miranda</u> warnings were given. Thereafter, Detective Shea asked the petitioner if he wished to waive the Fifth Amendment right. The petitioner responded that he did not know exactly what that meant. In an attempt to explain, Detective Shea told the petitioner, among other things, that he had talked with others who attended the party, and he wanted to give the petitioner the opportunity to explain what happened. The petitioner responded that he would explain. Thereafter, the petitioner denied having vaginal and oral intercourse with Woodbury. He admitted to digital intercourse. (Copy of statement attached hereto and marked "B").

      d. Petitioner, prior to trial, filed a motion to suppress the statement. The motion was denied. The motion was renewed at the beginning of trial. Again, it was denied.

      5. The petitioner asserts that both the statement and waiver of rights were involuntary; that pursuant to <u>Miranda v. Arizona</u>, supra, the statement should have been suppressed.

6. Petitioner asserts that the adjudication of the issue by the Massachusetts courts was "contrary to" or involved "an unreasonable application of" clearly established Supreme Court law.

7. Petitioner has exhausted available state remedies pursuant to 28 U.S.C. 2254 by claiming an appeal to the Appeals Court and thereafter seeking further appellate review in the Supreme Judicial Court.

8. Petitioner also says that his petition is timely in that it is filed within one year after the order of the Supreme Judicial Court denying further appellate review, which order was issued on July 23, 2003.

Because of the foregoing facts, petitioner is being restrained of his liberty in violation of the Constitution of the United States, and he, therefore, prays that the writ be granted.

By his attorney,

*Willie J. Davis*

WILLIE J. DAVIS
BBO#: 116460
Davis, Robinson & White
One Faneuil Hall Marketplace
Boston, MA 02109
(617) 723-7339

## VERIFICATION

I have read the allegations set forth in the petition and they are all true to the best of my knowledge and belief.

Signed under the pains and penalties of perjury this 25th day of November, 2003.

_____
WILLIE J. DAVIS

Citation/Title
788 N.E.2d 1021, 58 Mass.App.Ct. 1103, Com. v. White, (Mass.App.Ct. 2003)

**\*1021**   788 N.E.2d 1021

58 Mass.App.Ct. 1103


NOTICE:   THIS IS AN UNPUBLISHED OPINION.

Appeals Court of Massachusetts.

**COMMONWEALTH,**
v.
**Tajien WHITE.**

**No. 02-P-23.**
May 20, 2003.

*MEMORANDUM AND ORDER PURSUANT TO RULE 1:28*

In a jury-waived trial, the defendant, Tajien White, was found guilty of three counts of statutory rape.  The defendant appeals arguing that his motion to suppress was improperly denied, as was his motion for reconsideration at trial.  As we conclude that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights, and voluntarily made the inculpatory statement to the police, we affirm.

The motion judge found the following facts: On February 16, 1998, the defendant, a seventeen year old student and junior at a public high school, attended a party held at the house of a fellow student whose parents were away.  Four days later, "[o]n February 20, 1998, the defendant learned that the Belmont police wanted to speak to him about the party.  Even though he did not know specifically why the police wanted to speak to him, he went to the station to speak to them.  He arrived at about 2:00 P.M. and was told that he would have to await the arrival of Detective Kevin Shea...."

Detective Shea had been investigating a report that the defendant had sexually assaulted the fourteen year old victim at the party.  Shea had interviewed witnesses, including several who had seen the defendant and the victim in a bathroom together.  After running a criminal offender record information (CORI) check on the defendant, which showed no criminal history, Detective Shea took the defendant to an office upstairs and began his interview.

Detective Shea did not inform the defendant that he was suspected of rape.  Detective Shea started the interview, which was recorded, (FN1) by giving the defendant the Miranda warnings to read, and then reading them to him.  After the last question, "the defendant said that there was one thing he did not

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

Page 2
788 N.E.2d 1021, 58 Mass.App.Ct. 1103, Com. v. White, (Mass.App.Ct. 2003)

understand. Detective Shea could not remember what it was, however the matter was made clear to the defendant." The defendant responded, "All right, I'll explain it," and waived his rights orally and in writing. The defendant told the police his version of what occurred at the party: he had placed his fingers in the victim's vagina, but had not placed his penis in her vagina or mouth. (FN2)

The judge also found the following: The defendant, "because of attention deficit and other disabilities, had a problem understanding some things," but that "he [had been] elected vice-president of his class, president of the student council and liaison to the ... School Committee." The defendant had not been tricked or coerced, and his narration of events was rational and coherent. He also had not "manifest[ed] any symptoms of a mental defect." The judge denied the motion to suppress stating, "An examination of the defendant's statement itself indicates that the defendant was able to answer questions knowingly and voluntarily."

"The Commonwealth bears the burden of proving beyond a reasonable doubt that, in the totality of the circumstances, the defendant voluntarily, knowingly, and intelligently waived his Miranda rights," and that "the defendant's statements were made voluntarily." *Commonwealth v. Jackson,* 432 Mass. 82, 85 (2000). "In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.' ... However, we will make an independent inquiry 'to ascertain whether the judge properly applied the law in a given case.' " *Commonwealth v. Mandile,* 397 Mass. 410, 412-413 (1986), quoting from *Commonwealth v. Benoit,* 389 Mass. 411, 419 (1983). A judge's conclusion as to the voluntariness of the statement "must appear from the record with unmistakable clarity." *Commonwealth v.. Ward,* 426 Mass. 293, 296 (1997). *Commonwealth v. Jackson, supra* at 85. While "the voluntariness of a Miranda waiver and the voluntariness of the statement are separate and distinct inquiries, ... the 'totality of the circumstances' test under each analysis is [essentially] the same." *Commonwealth v. Jackson, supra* at 85-86. On appeal, because the inquiries are based on the same allegations of impropriety, the defendant treated the waiver and the voluntariness of the statement together.

**\*1021\_** The judge correctly considered the appropriate factors, including the defendant's age, education, intelligence, inexperience with the law, his physical and mental attributes, and the details of the interrogation. See *Commonwealth v. Jackson, supra* at 86. See also *Commonwealth v. Pucillo,* 427 Mass. 108, 111 & n. 1 (1998) (the fact that the defendant was seventeen and inexperienced with the criminal justice system did not affect his ability to waive his Miranda rights or make a voluntary statement); *Commonwealth v. D'Entremont,* 36 Mass.App.Ct. 474 Mass. 481 & n. 8 (1994). Although learning difficulties or a lack of educational skills are in and of themselves not sufficient to invalidate a waiver of rights or render a statement involuntary, "special attention" must be given to them. *Commonwealth v. Jackson,* 432 Mass.

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.

Page 3

788 N.E.2d 1021, 58 Mass.App.Ct. 1103, Com. v. White, (Mass.App.Ct. 2003)

at 86, quoting from *Commonwealth v. Hartford*, 425 Mass. 378, 381 (1997). Here, the only evidence as to the defendant's mental limitations was testimony that the defendant was a special education student and that he had a problem understanding some things. Those problems did not prevent the defendant from playing an active role in his high school as vice-president of his class, president of the student council, and liaison to the school committee. The police officers did not use deceptive tactics to elicit the inculpatory statements from the defendant. See *Commonwealth v. Williams*, 388 Mass. 846, 853 (1983). Detective Shea clearly explained the defendant's rights to him, and the defendant coherently told his side of the story. Detective Shea was not required to inform the defendant that he was suspected of rape. See *Commonwealth v. Medeiros*, 395 Mass. 336, 345 (1985). The judge's findings were warranted by the evidence and supported his conclusion that the defendant waived his Miranda rights voluntarily, knowingly, and intelligently, see *Commonwealth v. Mandile*, 397 Mass. at 412-413; *Commonwealth v. Jackson, supra* at 85, and his conclusion as to the voluntariness of the statement appears with "unmistakable clarity." *Commonwealth v. Ward*, 426 Mass. at 296; *Commonwealth v. Jackson, supra*.

A different judge at trial noted that, if the voluntariness of the statement became a "live issue" at trial, he would address it under our humane practice rule. Compare *Commonwealth v. Ortiz*, 431 Mass. 134, 141 (2000). It did not become an issue at this jury-waived trial.

*Judgments affirmed.*

(FN1.) Though the defendant disputes that the motion judge had the tape available to him, in his decision the judge refers to having listened to that tape, and the defendant included the transcript of the tape in his appendix. That transcript included the following:

Detective Shea: "We want to talk to you about an incident that occurred [at the party]. Before doing so, I want to advise you of your rights. That's what I explained to you downstairs, that you didn't have to talk to me if you didn't want to. And if you want to, you know, come forward and tell me what occurred that evening, it's up to you. But I first want to read the rights to you so you understand them."

Defendant: "Um-hum."

Detective Shea: "After each line that I read to you I just want you to verbally tell me if you understand. If not, we'll go over it and I'll explain what it means to you. Okay?"

Defendant: "Right."

Detective Shea: "You have the right to remain silent. Anything you say can and will be used against you in a court of law. Do you understand what that

© 2003 West, a Thomson business. No claim to original U.S. Govt. works.