UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TAJIEN WHITE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. |
| | ) | 03-12388-RGS |
| vs. | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS, | ) | |
| | ) | |
| Respondent. | ) | |

**RESPONDENT'S MEMORANDUM OF LAW
IN OPPOSITION TO PETITIONER'S PETITION FOR
WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The respondent hereby submits this memorandum in opposition to the petition for writ of habeas corpus filed by Tajien White ("the petitioner"). As set forth below, the petition pursuant to 28 U.S.C. § 2254 should be denied where the Massachusetts Appeals Court's decision resolving the petitioner's claims against him was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court.

**STATEMENT OF THE CASE**

On April 21, 1998, the petitioner was arraigned on three counts of rape. *See* Docket Sheet in Middlesex County Criminal Action No. 1998-00580, attached to Respondent's Supplemental Answer (hereinafter, "Supp. Ans."), as Exhibit 1. On November 15, 1999, the Superior Court held an evidentiary hearing on the petitioner's motion to suppress. *See id.*; Supp. Ans., Exhibits 2-3. On December 2, 1999, the Superior Court, Graham, J., denied the motion to suppress. Supp. Ans., Exhibit 5. The petitioner moved for reconsideration of the motion to

suppress, but the request for reconsideration was denied. *See* Supp. Ans., Exhibit 6.

On September 5, 2000, the jury-waived trial of the petitioner commenced. *See* Supp. Ans., Exhibit 1. On September 11, 2000, the trial judge found the petitioner guilty on all three counts on which he was charged. *See id.*

The petitioner appealed his conviction to the Massachusetts Appeals Court. Supp. Ans., Exhibits 7-8. The Appeals Court denied the petitioner's appeal and affirmed his conviction. *See id.*, Exhibit 10. The petitioner filed an Application for Leave to Obtain Further Appellate Review with the Massachusetts Supreme Judicial Court; this application was also denied. *Id.*, Exhibits 11-12.

## STATEMENT OF FACTS

The Appeals Court's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court"), 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). This deference extends to inferences drawn by the state court from those factual determinations as well. *See Parke v. Raley*, 506 U.S. 20, 35, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

As recited by the Appeals Court, the Superior Court judge who heard the motion to suppress found the following facts:

On February 16, 1998, the defendant, a seventeen year old student and junior at a

public high school, attended a party held at the house of a fellow student whose parents were away. Four days later, "[o]n February 20, 1998, the defendant learned that the Belmont police wanted to speak to him about the party. Even though he did not know specifically why the police wanted to speak to him, he went to the station to speak to them. He arrived at about 2:00 P.M. and was told that he would have to await the arrival of Detective Kevin Shea . . . ."

Detective Shea had been investigating a report that the defendant had sexually assaulted the fourteen year old victim at the party. Shea had interviewed witnesses, including several who had seen the defendant and the victim in a bathroom together. After running a criminal offender record information (CORI) check on the defendant, which showed no criminal history, Detective Shea took the defendant to an office upstairs and began his interview.

Detective Shea did not inform the defendant that he was suspected of rape. Detective Shea started the interview, which was recorded,[1] by giving the

---

[1] In a footnote, the Appeals Court noted:

Though the defendant disputes that the motion judge had the tape available to him, in his decision the judge refers to having listened to that tape, and the defendant included the transcript of the tape in his appendix. The transcript included the following:

Detective Shea: "We want to talk to you about an incident that occurred [at the party]. Before doing so, I want to advise you of your rights. That's what I explained to you downstairs, that you didn't have to talk to me if you didn't want to. And if you want to, you know, come forward and tell me what occurred that evening, it's up to you. But I first want to read the rights to you so you understand them."

Defendant: "Um-hum."

Detective Shea: "After each line that I read to you I just want you to verbally tell me if you understand. If not, we'll go over it and I'll explain what it means to you. Okay?"

Defendant: "Right."

Detective Shea: "You have the right to remain silent. Anything you say can and will be used against you in a court of law. Do you understand what that means?"

Defendant: "Um-hum."

Detective Shea: "You have the right to an attorney. Do you understand that?"

(continued...)

3

defendant the Miranda warnings to read, and then reading them to him. After the last question, "the defendant said that there was one thing he did not understand. Detective Shea could not remember what it was, however the matter was made clear to the defendant." The defendant responded, "All right, I'll explain it," and waived his rights orally and in writing. The defendant told the police his verison of what occurred at the party; he had placed his fingers in the victim's vagina, but had not placed his penis in her vagina or mouth.[2]

---

[1](...continued)
Defendant: "Um-hum."

Detective Shea: "Okay. If you cannot afford an attorney, one will be appointed for you by the Commonwealth at no expense and prior to any questioning. Do you understand that?"

Defendant: "Yes."

Detective Shea: "Okay. If you decide to waive this right pursuant to the [sic] Miranda which I'm reading to you now, you may stop answering questions at any time you desire. Do you understand that?"

Defendant: "Um-hum."

Detective Shea: "Having these rights in mind, do you wish to waive the Fifth Amendment right and speak to me regarding the situation?"

Defendant: "I don't know, like exactly what that means."

Detective Shea: "As I explained to you about -- What we want to talk to you about is what occurred [at the party]. This here is -- I have some questions I want to ask you. I've talked to everyone that's been at the party. I still have a couple more names, but I've been in all day today I've been going at this. And I just want to know now that you're here -- You came in here on your own free will. You walked in the door here, and that's why I'm telling you now. I read you your rights here. You have the opportunity not to say anything. You can just cease this interview before it really starts, or if you want to explain to me what happened. That's what I've explained to you here."

*Commonwealth v. White*, Supp. Ans., Exhibit 10, n. 1.

[2] The Appeals Court explained in a footnote that "[t]he first indictment alleged that the defendant placed his penis in the victim's vagina; the second alleged that he placed his penis in her mouth; and the third alleged that he placed his fingers in her vagina." *Commonwealth v. White*, Supp. Ans., Exhibit 10, n. 2.

4

> The judge also found the following: The defendant, "because of attention deficit and other disabilities, had a problem understanding some things," but that "he [had been] elected vice-president of his class, president of the student council and liaison to the . . . School Committee." The defendant had not been tricked or coerced and his narration of events was rational and coherent. He also had not "manifest[ed] any symptoms of a mental defect."

*Commonwealth v. White,* 58 Mass. App. Ct. 1103, 788 N.E.2d 1021 (2003)(table), attached to the

Supplemental Appendix as Exhibit 10.

The judge denied the motion to suppress, stating "An examination of the defendant's

statement itself indicates that the defendant was able to answer questions knowingly and

voluntarily." *Commonwealth v. White*, Supp. Ans., Exhibit 10.

## ARGUMENT

I.    **THE PETITIONER IS NOT ENTITLED TO HABEAS CORPUS RELIEF WHERE THE APPEALS COURT'S ADJUDICATION OF HIS CLAIM WAS NOT CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED SUPREME COURT LAW.**

A.    **Standard of Review**

Since the instant petition was filed after the effective date of the Antiterrorism and

Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v.*

*Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). *See also* 28 U.S.C. §

2254. AEDPA "places a new constraint on the power of a federal habeas court to grant a state

petitioner's application for a writ of habeas corpus with respect to claims adjudicated on the

merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000)("a federal [habeas] court

operates within a closely circumscribed sphere"). As the Supreme Court recently reiterated,

AEDPA requires a "'highly deferential standard for evaluating state-court rulings' . . . which

5

demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 23, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)(*per curiam*), *quoting Lindh*, 521 U.S. at 333, n.7. In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler v. Cain*, 533 U.S. 656, 660, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001). In addition, under AEDPA, state court determinations of factual issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Coombs*, 202 F.3d at 18.

1.    *The "Contrary To" Prong*

A state court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. at 405-06. Under either scenario, in order to fall within the "contrary to" clause, the state court decision must be "substantially different," diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court law. *Id.*

2.    *The "Unreasonable Application Of" Prong*

A state court decision involves an "unreasonable application" of Supreme Court

6

precedent "if the state court identifies the correct governing legal rule from [the Supreme]

Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

*Williams v. Taylor*, 529 U.S. at 407-09, 413.  Merely that the state court reached an incorrect

result is not sufficient -- the result also must be unreasonable.  *L'Abbe v. DiPaolo*, 311 F.3d 93,

96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303

F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is

required' . . . The increment need not necessarily be great, but it must be great enough to make

the decision unreasonable in the independent and objective judgment of the federal court"),

*quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).  Where, for instance, the state

court reaches a result that is "devoid of record support for its support for its conclusion or is

arbitrary," the unreasonable application prong likely will be satisfied."  *McCambridge*, 303 F.3d

at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998).  *See also Kibbe v. DuBois*, 269

F.3d 26, 35 (1st Cir. 2001), *cert. denied,* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16

(1st Cir.), *cert. denied,* 534 U.S. 925 (2001).  In order for a federal habeas court to find that the

"unreasonableness" prong has been met, the state court's determination of either the law or the

facts must be *objectively* unreasonable.  *See Williams v. Taylor,* 529 U.S. at 411; *Williams v.*

*Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable"

application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he

term 'unreasonable' is no doubt difficult to define").  As the Supreme Court has made clear,

however, an incorrect state court determination is not necessarily an unreasonable one.  *Id.* ("the

most important point is that an unreasonable application of federal law is different from an

*incorrect* application of federal law")(emphasis in original).   It is well-settled that "a federal

habeas court may not issue the writ simply because the court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously

or incorrectly.  Rather, that application [or determination] must also be unreasonable." *Id.* at 411.

The First Circuit's ruling with respect to AEDPA is consistent with the standard

articulated by the Supreme Court in *Williams*.  The First Circuit has held that AEDPA:

> does not empower a habeas court to grant the writ merely because it disagrees
> with the state court decision, or because, left to its own devices, it would have
> reached a different result.  Rather, for the writ to issue, the state court decision
> must be so offensive to existing precedent, so devoid of record support, or so
> arbitrary, as to indicate that it is outside the universe of plausible, credible
> outcomes.

*O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998).  *See also Williams v. Matesanz*, 230 F.3d at

423 (expressly recognizing the congruence between *O'Brien* and *Williams v. Taylor*).  This same

standard should be applied to determine whether a state court's decision was based on "an

unreasonable determination of the facts in light of the evidence presented in the State court

proceeding" under 28 U.S.C. § 2254(d)(2).  *See Torres*, 223 F.3d at 1108 (reasonableness

standards under § 2254(d)(1) and (d)(2) are the same).

**B.    The Massachusetts Supreme Judicial Court's Decision on the Petitioner's
       Claim Regarding the Voluntariness of his Statements Was Neither Contrary
       To, Nor an Unreasonable Application of, Established Federal Law.**

In his petition for a writ of habeas corpus, the petitioner alleges that his conviction was

obtained through evidence which was obtained in violation of the privilege against self-

incrimination contained in the Fifth Amendment.  The petitioner argues that he did not

voluntarily waive his rights under *Miranda v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602,

16L.Ed.2d 694 (1966), and that the statements he gave to the police were not the product of a voluntary waiver of his right against self-incrimination. However, a review of the record and the governing law demonstrate that the Appeals Court's decision was neither contrary to nor an unreasonable application of established Supreme Court precedent on this issue.

>    1.    *Supreme Court Authority Governing the Claim Regarding the Privilege Against Self-Incrimination.*

The Supreme Court has articulated principles governing the petitioner's contention that he did not waive his rights under *Miranda v. Arizona* and that his statements to the police were not the product of a voluntary waiver of the right against self-incrimination. It is beyond question that before a person in custody may be questioned by authorities, he must be warned of his right against self-incrimination and his right to the presence of an attorney. *Miranda*, 384 U.S. at 444, 467-68. A defendant may, however, waive his rights, "provided the waiver is made voluntarily, knowingly and intelligently," and the government bears the "heavy burden" of proving that the defendant knowingly and intelligently waived his rights under *Miranda. Id.* at 444, 475 (citing *Escobedo v. Illinois*, 378 U.S. 478, 490 n.14 (1964)).

The Supreme Court has made clear that waiver of the right against self-incrimination need not be express, but may be implied. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)(where defendant was given *Miranda* rights orally later declined to sign a written waiver, but agreed to talk to FBI agents, defendant held to have impliedly waived *Miranda* rights). As the Supreme Court stated in *North Carolina v. Butler*:

>    An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily

9

> waived the rights delineated in the *Miranda* case. . . . The courts must presume
> that a defendant did not waive his rights; the prosecution's burden is great; but in
> at least some cases waiver can be clearly inferred from the actions and words of
> the person interrogated.

*Butler*, 441 U.S. at 373. *Accord Bui v. DiPaola*, 170 F.3d 232, 240 (1st. Cir. 1999), *cert. denied*,

529 U.S. 1086 ("an express statement is not invariably necessary to support a finding that the

defendant waived either the right to remain silent or the right to counsel"),120 S.Ct. 1717, 146

L.Ed.2d 640 (2000); *United States v. Garcia*, 983 F.2d 1160, 1169 (1st Cir. 1993).

Under the implied waiver rule, the question whether there has been a knowing and

intelligent waiver of *Miranda* rights must be determined on the "particular facts and

circumstances surrounding that case, including the background, experience, and conduct of the

accused." *Butler*, 441 U.S at 374-75 (internal quotations omitted). *Accord Garcia*, 983 F.2d at

1169 ("in considering whether a defendant has voluntarily relinquished his Fifth Amendment

rights, [a court] must examine the 'totality of the circumstances surrounding the interrogation'").

Absent the "crucial element of police overreaching," there is "simply no basis for concluding that

any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connolly*,

479 U.S. 157, 163-64 (1986).

> 2. *The Appeals Court's Rejection of the Claim That the Trial Court Erred in
> Not Suppressing the Petitioner's Statements to Police Was Neither
> "Contrary To" Nor an "Unreasonable Application Of" the Controlling
> Supreme Court Authority*

Measured against the controlling Supreme Court authority outlined above, the

Massachusetts Appeals Court's decision rejecting the petitioner's motion to suppress claim was

neither "contrary to" nor an "unreasonable application of" controlling Supreme Court precedent.

In his brief, the petitioner seeks to challenge the Appeals Court's finding that the waiver of his

Fifth Amendment rights by asserting that (1) the petitioner had been evaluated as having a

difficulty in connection with his learning capacity and (2) after the petitioner responded that there

was one thing he did not understand (in response to being given his *Miranda*) warnings, no

further explanation was provided to him. *See* Petitioner's Memorandum, pp 6-7. Each of these

arguments has, however, been considered and rejected by the Appeals Court. *See* Supp. Ans.,

Exhibit 10.    In light of the facts adduced with respect to each of these two arguments, the

Appeals Court's decision cannot be said to be "contrary to" or an "unreasonable application of"

established Supreme Court precedent.

> In rejecting the petitioner's claim, the Appeals Court found that:

> The judge correctly considered the appropriate factors, including the defendant's age, education, intelligence, inexperience with the law, his physical and mental attributes, and the details of the interrogation. *See Commonwealth v. Jackson*, [432 Mass. 82 (2000)] at 86. *See also Commonwealth v. Pucillo*, 427 Mass. 108, 111 & n.1 (1998)(the fact that the defendant was seventeen and inexperienced with the criminal justice system did not affect his ability to waive his Miranda rights or make a voluntary statement); *Commonwealth v. D'Entremont*, 36 Mass. App. Ct. 474, 481 & n.8 (1994).    Although learning difficulties or a lack of educational skills are in and of themselves not sufficient to invalidate a waiver of rights or render a statement involuntary, "special attention" must be given to them. *Commonwealth v. Jackson,* 432 Mass. at 86, quoting from *Commonwealth v. Hartford*, 425 Mass. 378, 381 (1997).    Here, the only evidence as to the defendant's mental limitations was testimony that the defendant was a special education student and that he had a problem understanding some things.    Those problems did not prevent the defendant from playing an active role in his high school as vice-president of his class, president of the student council, and liaison to the school committee.

*Commonwealth v. White,* Supp. Ans., Exhibit 10.

The foregoing clearly shows that the Appeals Court considered the evidence concerning

the petitioner's learning difficulties and determined that, within the totality of the circumstances,

these learning difficulties did not prevent the petitioner from making a knowing, intelligent,

voluntary waiver of his Fifth Amendment rights. *See Commonwealth v. White,* Supp. Ans.,

Exhibit 10.  The Appeals Court's determination was, then, in line with its obligations as

determined by Supreme Court precedent, *see, e.g., Schneckcloth v. Bustamonte,* 412 U.S. 218

(1973), and was not contrary to nor an unreasonable application of constitutional law.

With respect to the petitioner's assertion that there was no further explanation after the

petitioner said that he did not know exactly what it meant to waive his Fifth Amendment rights,

the evidence shows that after the petitioner said he was unclear the police provided another

simple, clear explanation of the petitioner's rights.  Specifically, Detective Shea told the

petitioner, *"You have the opportunity not to say anything.  You can just cease this interview*

*before it really starts . . . ." Commonwealth v. White,* Supp. Ans., Exhibit 10, n. 1 (emphasis

added).  The Appeals Court reproduced this portion of the transcript of the interview of the

petitioner in its decision, showing that it considered what was said by the petitioner and by

Detective Shea in determining that the petitioner had made a knowing, voluntary and intelligent

waiver of his Fifth Amendment rights. *See id.*

In short, the Appeals Court properly considered the totality of the circumstances

surrounding the petitioner's statement and determined that he had knowingly and voluntarily

waived his rights.  The Appeals Court found:

> The police officers did not use deceptive tactics to elicit the inculpatory
> statements from the defendant. *See Commonwealth v. Williams,* 388 Mass. 846,
> 853 (1983). Detective Shea clearly explained the defendant's rights to him, and
> the defendant coherently told his side of the story. Detective Shea was not
> required to inform the defendant that he was suspected of rape. *See*
> *Commonwealth v. Medeiros,* 395 Mass. 336, 345 (1985). The judge's findings
> were warranted by the evidence and supported his conclusion that the defendant
> waived his Miranda rights voluntarily, knowingly, and intelligently. *See*
> *Commonwealth v. Mandile,* 397 Mass. at 412-13; *Commonwealth v. Jackson,*

*supra* at 85, and his conclusion as to the voluntariness of the statement appears with "unmistakable clarity." *Commonwealth v. Ward*, 426 Mass at 296; *Commonwealth v. Jackson, supra.*

*Commonwealth v. White,* Supp. Ans., Exhibit 10. Since the Appeals Court properly considered

the totality of the circumstances in determining whether there was a proper waiver of Fifth

Amendment rights, there was no error of constitutional law. The petitioner cannot, therefore,

show that the state court's decision was either contrary to established federal law or an

unreasonable application of such law, and therefore this claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the respondent requests that this Court deny the petition for a

writ of habeas and dismiss the petitioner's complaint in its entirety.


Respectfully submitted,

COMMONWEALTH OF
MASSACHUSETTS,

By its attorneys,

THOMAS F. REILLY
ATTORNEY GENERAL


Maura D. McLaughlin
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2857

Dated: August 26, 2004

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Willie J. Davis, Esq., counsel for the petitioner, on August 26, 2004, by depositing the copy in the office depository for collection and delivery by first-class mail, postage pre-paid, to him as follows: Willie J. Davis, Esq., Davis, Robinson & White, L.L.P., Attorneys at Law, One Faneuil Hall Marketplace, South Market Building, Boston, Massachusetts 02109.

Maura D. McLaughlin