# United States District Court
# District of Massachusetts

TAJIEN WHITE,
    Petitioner,

v.                                         CIVIL ACTION NO. 03-12388-RGS

COMMONWEALTH OF MASSACHUSETTS,
    Respondent.

## *REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS (#1)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On November 25, 2003, Petitioner Tajien White ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (#1). On August 4, 2004, he filed a supporting memorandum (#12), alleging that he was convicted of statutory rape as a result of an incriminating statement that the

trial court declined to suppress being admitted into evidence during his trial in violation of the Fourteenth Amendment, and that the failure of the trial and appeals courts to suppress the statement constitutes a decision contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.[1] The Commonwealth of Massachusetts ("Respondent") filed a response to the petition and a supplemental answer on May 17, 2004 (#6), followed by a memorandum in opposition to the petition on August 26, 2004 (#13), arguing that the adjudication of the Massachusetts courts was neither contrary to, nor an unreasonable application of, clearly established federal law. The case was referred to the undersigned for Report and Recommendation on June 29, 2004.

---

[1] It is important to note that for the purposes of a habeas corpus petition, Petitioner is considered to be "in custody" although he is currently serving a five-year sentence of probation with certain restrictive conditions. Persons in custody are still considered to be within the control of the state. *See Brooks v. N.C. Dep't of Corrections*, 984 F. Supp. 940, 946 (E.D.N.C., 1997). In addition, although Petitioner's term of probation may have expired by the time this judgment is entered, his petition is not moot if "adverse collateral consequences continue to flow from the underlying conviction." *See Wood v. Hall*, 130 F.3d 373, 376 (9 Cir., 1997), *cert. denied sub nom. Wood v. Cook,* 523 U.S. 1129 (1998) citing *Chacon v. Wood*, 36 F.3d 1459, 1463 (9 Cir., 1994), *superseded by statute on other grounds*. Petitioner's claim is indeed not moot because he was convicted of statutory rape, and "there is an 'irrebuttable' presumption that collateral consequences arise from any criminal conviction." *Chacon*, 36 F.3d at 1463. *See also Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998).

## II. *Facts and Procedural History*[2]

On February 16, 1998, at the age of seventeen, Petitioner attended a party at the house of a classmate whose parents were away (#13, pp. 2-3). On February 20, 1998, Petitioner went to the local police station after learning the police wanted to speak with him (#13, p. 3). Detective Kevin Shea ("Detective Shea") had been investigating Petitioner in response to a report that Petitioner had sexually assaulted a fourteen-year-old girl in a bathroom during the party (*Id.*). After arriving at the police station, Petitioner was taken to an office upstairs and Detective Shea began the interview, which was being recorded. Petitioner was not told the reason he was being questioned (*Id.*).

Before questioning Petitioner, Detective Shea read him the *Miranda* warnings (#13, pp. 3-4). After each warning was read, Detective Shea asked Petitioner if he understood what he just said (*Id.*). Petitioner replied affirmatively that he understood each warning until Detective Shea's final

---

[2] Petitioner's recitation of the facts and procedural history is set out at pp. 2-5 of the Memorandum of Law in support of his petition (#12), and Respondent's version is at pp. 1-5 of its Memorandum of Law in Opposition to Petitioner's Petition for Writ of Habeas Corpus (#13). This Court hereby adopts the version of the facts recounted by the Massachusetts Appeals Court ("the appeals court") in *Commonwealth v. White*, 58 Mass.App.Ct. 1103, 788 N.E.2d 1021, *rev. denied*, 439 Mass. 1110 (2003) and presumes all of those facts to be true as it must pursuant to 28 U.S.C. § 2254(e)(1). In the interest of brevity, only those facts that are relevant for purposes of issuing a Report and Recommendation on the instant petition are restated. (Citations are to Respondent's Memorandum (#13), unless otherwise noted, rather than to the underlying decision by the appeals court).

question, asking Petitioner whether he wished to waive his Fifth Amendment rights (#13, p. 4). Petitioner replied, "I don't know, like exactly what that means" (*Id.*). In response, Detective Shea said:

> As I explained to you about – What we want to talk to you about is what occurred [at the party]. This here is – I have some questions I want to ask you. I've talked to everyone that's been at that party. I still have a couple more names, but I've been in all day today I've been going at this. And I just want to know now that you're here – You came in here on your own free will. You walked right in the door here, and that's why I'm telling you now. I read your rights here. You have the opportunity not to say anything. You can just cease the interview before it really starts, or if you want to explain to me what happened. That's what I've explained to you here.

*Id.*

Following this response, Petitioner replied, "All right, I'll explain it" and waived his Fifth Amendment rights both orally and in writing (*Id.*). Detective Shea then proceeded to interrogate Petitioner concerning the events that transpired leading up to, during, and after the party (*Id.*). During the course of the interrogation, Petitioner confessed to placing his fingers in the fourteen-year-old girl's vagina, but denied having intercourse or oral sex with her (*Id.*). Petitioner was arrested at the conclusion of the interrogation (#6, Ex. 4, p. 3).

4

Petitioner was later indicted and charged with three counts of statutory rape in late April, 1998 (#6, Ex. 1, p. 4). On November 15, 1999, Petitioner moved to suppress his admission that he had placed his fingers in the victim's vagina on the grounds that various factors suggested that Petitioner's statement was not voluntary, including Petitioner's inexperience with the criminal justice system, his age, and his status as a special needs student, in addition to Petitioner's statement that he did not understand the last warning Detective Shea read to him (#6, Ex. 3, p. 4). The Superior Court denied Petitioner's motion to suppress on December 2, 1999 (#6, Ex. 1, p. 6). Petitioner then moved for reconsideration of his motion, but this request was also denied (#6, Ex. 6). Petitioner was tried on or about September 11, 2000 in a jury-waived trial, and on that same day, the trial judge found Petitioner guilty on all three counts of statutory rape (#6, Ex. 1, p. 8). Petitioner was sentenced to "18 months in the [House Of Corrections] suspended for 2 years with special Probationary conditions"[3] (*Id.*).

---

[3] These conditions included "(1) 1 year of Home Confinement with the electronic Bracelet, except (A) to attend school and official school activities (including school athletic teams) and (B) to work to pay for the electronic Bracelet (approximately $50/week). (2) The defendant is to obtain employment and work a sufficient number of hours to pay for the Bracelet. (3) No contact direct or indirect with the victim or her family. (4) General Counseling in the discretion and under the direction of the probation department (not sex offender counseling). Victim witness fee and probation supervision fee, such fee to be suspended furing [sic] the period that the defendant is paying for the electronic monitoring bracelet" (#6, Ex. 1, p. 8).

Petitioner appealed his conviction to the appeals court, which denied his appeal and affirmed his conviction (#6, Ex. 2, p. 47). Petitioner then filed an Application for Leave to Obtain Further Appellate Review with the Massachusetts Supreme Judicial Court (#6, Ex. 11), but his application was denied (#6, Ex. 12). Thus, Petitioner has exhausted available state remedies as is required before he can petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[4]

### III. Analysis

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2254, imposed new restraints on the ability of federal courts to grant habeas relief from the judgments of state courts. Part of Section 2254 provides that a habeas corpus petition shall not be granted when already adjudicated on the merits by a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Section 2254(d)(1).

Petitioner filed the present action on the grounds that he was convicted

---

[4] There is no dispute that Petitioner has raised the same issue before this Court that he raised before the state appeals court and the Supreme Judicial Court.

in violation of the due process clause of the Fourteenth Amendment following the trial judge's denial (and, subsequently, the appeals court's affirmation of the denial) of his motion to suppress his involuntary waiver of Fifth Amendment rights and subsequent incriminating statement. In order to determine whether Petitioner is entitled to habeas relief, this Court must decide whether the decisions of the trial court and appeals court denying Petitioner's motion to suppress were either "contrary to" or "an unreasonable application of" established Supreme Court law. In order to make such decisions, it is necessary first to examine how courts have interpreted the phrases "contrary to" and "unreasonable application of."

In *Williams v. Taylor,* the Supreme Court said that a state court decision would be "contrary to" established Supreme Court law either if the court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or if the court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." 529 U.S. 362, 405 (2000).

A state court decision is an "unreasonable application of" established Supreme Court law if the court "identifies the correct governing legal principle

from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Additionally, *Williams* emphasized that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law" (emphasis in original). *Id.* at 410. When determining whether a state court's decision is an "unreasonable application of" established Supreme Court law, the analysis should be "objective." *Id.* at 409. Consequently, a federal court should not issue a writ simply because the court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

The court in *Hurtado v. Tucker,* 245 F.3d 7 (1 Cir.), *cert. denied,* 534 U.S. 925 (2001) explained that "the Supreme Court in *Williams* explicitly rejected the view...that an 'unreasonable application of' clearly established federal law requires that the application be one that *all* reasonable jurists would agree was unreasonable. ...Thus, the test is an objective one and not so stringent as to require that all reasonable jurists agree the state court decision was unreasonable." 245 F.3d at 17 (emphasis in original); *see also McCambridge v.*

*Hall*, 303 F.3d 24, 36 (1 Cir., 2002) (overruling *O'Brien v. Dubois*, 145 F.3d 16, 25 (1 Cir., 1998) and *Williams v. Matesanz*, 230 F.3d 421, 429 (1 Cir., 2000), in holding that for a state court determination to be considered an "unreasonable application" of federal law, there must be "some increment of incorrectness beyond error" such that the decision is considered unreasonable in the "independent and objective judgment of the federal court"). This Court must decide now whether the judgments of the trial or appeals court in Petitioner's case were "contrary to" or "unreasonable applications of" established Supreme Court precedent.

Petitioner asserts that the Massachusetts trial and appeals courts "unreasonably" applied Supreme Court precedent to the facts of his case in that they unreasonably applied the "totality of circumstances" test utilized by the Supreme Court for determining whether a waiver of a suspect's Fifth Amendment rights was knowing and voluntary.

It is well-established that police may only question a suspect in custody after he has been informed of his right against self-incrimination and his right

to the presence of an attorney.[5] *Miranda v. Arizona*, 384 U.S. 436, 444, 467-8 (1966). A suspect may waive his Fifth Amendment right against self-incrimination, however, provided that the waiver was "voluntarily, knowingly, and intelligently" made. *Id.* at 444. The waiver of the right must be "voluntary in the sense that it was the product of a free and deliberate choice...and must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In order to determine whether a suspect voluntarily and knowingly waived his Fifth Amendment right, the Supreme Court has routinely applied a "totality of circumstances" test. *See, e.g., North Carolina v. Butler*, 441 U.S. 369, 374-5 (1979); *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Clewis v. State of Texas*, 386 U.S. 707, 708 (1967). This test involves examining the "particular

---

[5] Although neither party raised the issue, it appears that Petitioner was not in custody during his interrogation, even though the interrogation took place in a police station. *See California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("*Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is the one whom police suspect'"). Petitioner came to the police station of his own free will and was not restrained in any way until he was arrested immediately following the interrogation. Detective Shea was not required to read Petitioner the *Miranda* warnings before interrogating him, therefore, because Petitioner was not "deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). However, "'the details of the interrogation, including the recitation of *Miranda* warnings,' are relevant in determining whether a confession is voluntary." *Commonwealth v. Novo*, 442 Mass. 262, 271 (2004), citing *Commonwealth v. Mandile*, 397 Mass. 410, 413 (1986).

facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Butler*, 441 U.S. at 374-5.

Petitioner asserts that it was unreasonable for the Massachusetts courts to hold that his waiver and subsequent incriminating statement were knowing and voluntary under the "totality of circumstances" because he is a slow learner (as evidenced by his school having placed him in a special education program), because he was not informed that Detective Shea was interrogating him in response to a sexual assault complaint, because he did not receive sufficient clarification after he indicated that he did not understand one of the *Miranda* warnings Detective Shea read to him, and because at the time, he was inexperienced with the criminal justice system (#12, pp. 6-8).

Petitioner does not dispute that the trial and appeals court judges engaged in the correct mode of analysis in employing the "totality of circumstances" test and that they considered many of the aforementioned factors when rendering decisions on the motion to suppress his statement and on the validity of his conviction. Indeed, in its opinion, the appeals court stated:

> The [trial] judge correctly considered the appropriate factors, including [Petitioner's] age, education, intelligence, inexperience with the law, his physical and mental attributes, and the details of the

>interrogation.... Although learning difficulties or a lack of educational skills are in and of themselves not sufficient to invalidate a waiver of rights or render a statement involuntary, "special attention" must be given to them. *Commonwealth v. Jackson*, 432 Mass. [82,] 86 [(2000)], quoting from *Commonwealth v. Hartford*, 425 Mass. 378, 381 (1997)....Here, the only evidence as to [Petitioner's] mental limitations was testimony that [Petitioner] was a special education student and that he had a problem understanding some things. Those problems did not prevent [Petitioner] from playing an active role in his high school as vice-president of his class, president of the student council, and liaison to the school committee....Detective Shea was not required to inform [Petitioner] that he was suspected of rape. *See Commonwealth v. Medeiros,* 395 Mass. 336, 345 (1985).

#13, Ex. 10, pp. 1-2.

After considering the relevant factors and Petitioner's arguments concerning the interpretation of those factors, the trial and appeals courts made a determination that under the "totality of circumstances," Petitioner's waiver and subsequent incriminating statement were knowing and voluntary.

What Petitioner does assert is that the Massachusetts courts' application of the "totality of circumstances" test to the facts of his case was unreasonable. Specifically, it was unreasonable for the Massachusetts courts to find that under the "totality of circumstances," Petitioner knowingly waived his Fifth

Amendment rights (#12, p. 5).

Instances in which a higher court has found that a lower court applied the "totality of circumstances" test in a way that constituted a decision that was "contrary to" or an "unreasonable application of" federal law are rare. In fact, this Court has only located one such example, and that case involved actual coercion. In *Lam v. Kelchner*, the petitioner was convicted of conspiring to murder the wife of her ex-husband following an undercover investigation in which undercover officers threatened Lam with violence if she did not pay $15,000 for her brother's assistance in planning the murder. 304 F.3d 256, 260 (3 Cir., 2002). During a telephone conversation with an undercover officer, Lam agreed to pay the money provided that she would not be exposed. *Id.* The state appellate court affirmed the trial court's determination that Lam's statement to the undercover agent was voluntary under the "totality of circumstances." *Id.* at 261-2.

The Third Circuit Court of Appeals subsequently concluded that the state appellate court unreasonably deemed Lam's incriminating statement voluntary under the "totality of circumstances" because in a factually analogous Supreme Court case, *Arizona v. Fulminante*, 499 U.S. 279, *reh'g denied,* 500 U.S. 938

(1991), the Supreme Court engaged in a "totality of circumstances" analysis and determined that the petitioner's statement was coerced. *Lam,* 304 F.3d at 264-5.[6] Thus, the state appellate court's "totality of circumstances" analysis was unreasonable in light of the Supreme Court decision in *Fulminante,* the events of which "pale in comparison to those confronting Lam." *Id.* at 265.

In the instant case, Detective Shea did not engage in any active coercion. Petitioner has not cited a Supreme Court case factually analogous to his in which the Court found that under the "totality of circumstances," the petitioner did not knowingly waive his Fifth Amendment rights. The Court has not been able to find one. Absent such a case, he cannot succeed in his argument that the Massachusetts courts' "totality of circumstances" analysis was "contrary to" or an "unreasonable application of" federal law.

In its brief, Respondent raises the possibility that the trial and appellate courts' "totality of circumstances" analysis could be construed as unreasonable because neither directly addressed in its opinion the possibility that Petitioner might not have understood what it meant for him to waive his Fifth Amendment rights. The appeals court's only discussion in its opinion

---

[6] *Arizona v. Fulminante,* like *Lam,* involved actual coercion by the person attempting to elicit the statements.

14

concerning this issue was: "The [trial] judge's findings were warranted by the evidence and supported his conclusion that the defendant waived his *Miranda* rights voluntarily, knowingly, and intelligently" (#13, Ex. 10, p. 2). However, Petitioner cites no case law (nor has this Court found case law) holding that a court unreasonably applies the "totality of circumstances" analysis if a petitioner can point to one single factor (in this case, Petitioner's possible misunderstanding of his Fifth Amendment rights) that the court failed to discuss in its opinion. Therefore, this argument fails.

Petitioner also appears to argue that the decisions of the Massachusetts trial and appeals courts constituted an "unreasonable application of" *Miranda* to the facts of Petitioner's case because *Miranda* requires that the suspect "understan[d] the import of each *Miranda* warning," and Petitioner "did not understand his rights." (#12, p. 7). As stated before, an incorrect application of *Miranda* to the facts of Petitioner's case or a decision different from that which this Court would have made does not necessarily constitute an *unreasonable* application. It was not unreasonable for the trial and appeals courts to decide that Petitioner's waiver was knowing – Petitioner had indicated to Detective Shea that he understood each of the *Miranda* warnings, and the

only confusion occurred when Detective Shea asked Petitioner whether he wanted to waive his Fifth Amendment rights. Further, even if the trial and appeals courts had concluded that Petitioner's question indicated that he did not understand his rights at that point, they could have then reasonably concluded that Petitioner's ceasing to express confusion after hearing Detective Shea's satisfactory explanation indicated that Petitioner knowingly waived his Fifth Amendment rights.

In sum, Petitioner's arguments that the decisions of the trial and appeals courts constitute a decision "contrary to" or an "unreasonable application of" *Miranda* and the "totality of circumstances" test fail because both courts concluded that his statement was voluntary after engaging in a "totality of circumstances" analysis that took into account many factors concerning Petitioner's personal characteristics and the circumstances of the interrogation.

## IV. *Recommendation*

For the reasons stated above, I RECOMMEND that Petitioner's petition for writ of habeas corpus (#1) be DISMISSED.

## V. *Review by the District Judge*

The parties are hereby advised that pursuant to Rule 72, Fed. R. Civ. P.,

any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ *Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

Date: July 28, 2005.